UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ENTERGY SERVICES, INC.;
ENTERGY MISSISSIPPI, INC.;                          CIVIL ACTION
ENTERGY TEXAS, INC.;
ENTERGY NUCLEAR OPERATIONS, INC.;                   NO. 2:14-cv-01524
ENTERGY OPERATIONS, INC.; and
ENTERGY GULF STATES, LOUISIANA, LLC,                JUDGE _____

          PLAINTIFFS                                MAG. JUDGE _____

V.

UNITED STATES DEPARTMENT OF LABOR;
THOMAS E. PEREZ, in his official capacity,
Secretary, United States Department of Labor;
OFFICE OF FEDERAL CONTRACT
COMPLIANCE PROGRAMS, PATRICIA A.
SHIU, in her official capacity, Director, Office
of Federal Contract Compliance Programs,

          DEFENDANTS


**<u>COMPLAINT</u>**

1.      This is an action under Section 702 of the Administrative Procedure Act (APA), 5

U.S.C. § 702, for judicial review of a Final Administrative Decision and Order ("Final Order")

issued by the Administrative Review Board ("ARB") on May 19, 2014, and, alternatively, a

request for declaratory relief from this court pursuant to 28 U.S.C. § 2201.

2.      The Final Order affirmed the Decision and Order of the Administrative Law

Judge ("ALJ") dismissing Plaintiff's Administrative Complaint for Declaratory Relief.

3.      Plaintiffs, through their undersigned counsel, hereby allege as follows:

## PARTIES

4.     Plaintiff  Entergy Services, Inc. ("ESI"), a Delaware corporation headquartered in New Orleans, Louisiana, is a subsidiary of Entergy Corporation and provides administrative services for Entergy Corporation and its other subsidiaries (collectively, the "Entergy System"). The Entergy System generates, transmits and distributes electricity to its customers.  A large portion of the Entergy System's business consists of regulated utility companies that supply electricity and gas to rate-payers in Louisiana, Mississippi, Texas, and Arkansas.

5.     Plaintiff  Entergy  Mississippi,  Inc.  ("EMI"),  a  Mississippi  corporation headquartered in Jackson, Mississippi, is a subsidiary of Entergy Corporation and a regulated producer of electrical services.

6.     Plaintiff Entergy Texas, Inc. ("ETI"), a Texas corporation headquartered in Beaumont, Texas, is a subsidiary of Entergy Corporation and a regulated producer of electrical services.

7.     Plaintiff Entergy Nuclear Operations, Inc. ("ENOI"), a Delaware corporation headquartered in Jackson, Mississippi, is a subsidiary of Entergy Corporation.  It operates and holds licenses for certain nuclear power plants owned in whole or in part by one or more of Entergy Corporation's subsidiaries.

8.     Plaintiff Entergy Operations, Inc. ("EOI"), a Delaware corporation headquartered in Jackson, Mississippi, is a subsidiary of Entergy Corporation.  It operates and holds licenses for certain nuclear power plants owned in whole or in part by one or more of Entergy Corporation's subsidiaries.

9.     Plaintiff  Entergy  Gulf  States,  Louisiana,  LLC  ("EGS-LA"),  a  Louisiana corporation headquartered in Baton Rouge, Louisiana, is a subsidiary of Entergy Corporation and

a regulated producer of electrical services.

10.     The United States Department of Labor ("DOL") is an agency of the United States government and a proper defendant pursuant to 5 U.S.C. § 703.

11.     Thomas E. Perez, in his official capacity as Secretary of the DOL, is a proper defendant pursuant to 5 U.S.C. § 703.  The ARB, which issued the decision at issue here, is a delegate of the Secretary of Labor and "stands in his shoes" at his direction.  *See* Secretary of Labor's Order 96-2 (April 17, 1996), 61 *Federal Register* 1982 (May 3, 1996); 41 C.F.R. § 60-30.27-30.

12.     Defendant the Office of Federal Contract Compliance Programs ("OFCCP"), an agency of the United States Department of Labor, is a proper defendant pursuant to 5 U.S.C. § 703.  OFCCP, enforces the following:

   a. Executive Order 11246, as amended, which requires covered federal contractors  and subcontractors to undertake affirmative action for "minorities and women" and makes it unlawful to discriminate against applicants for employment and employees based on their race, sex, religion, color, and/or national origin;

   b. 38 U.S.C. § 4212 (that portion of the Vietnam Era Veterans Readjustment Assistance Act of 1974 (VEVRAA), as amended, which OFCCP enforces), which requires covered federal contractors and subcontractors to undertake affirmative action for "Protected Veterans"; and

   c. Section 503 of The Rehabilitation Act of 1973, as amended, which requires covered federal contractors and subcontractors to undertake affirmative action and makes it unlawful to discriminate against applicants for employment and

employees based on a covered disability.

OFCCP has published regulations pursuant to and implementing each of these laws.  Each set of OFCCP regulations makes provision for OFCCP to undertake "Compliance Evaluations" of covered federal contractors and subcontractors.

13.     Patricia A. Shiu, in her official capacity as Director of OFCCP, United States Department of Labor, is a proper defendant pursuant to 5 U.S.C. § 703.

## JURISDICTION

14.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and the APA, 5 U.S.C. § 702.  In addition, an actual controversy exists under the United States Constitution and the laws of the United States, as to which this Court can provide declaratory relief under 28 U.S.C. § 2201.  The existing controversy is shown by, among other considerations, the June 17, 2014 letter from the Civil Rights Division of the U.S. Department of Justice (the "DOJ") to notified counsel for the Entergy entities, John C. Fox, regarding Entergy Services, Inc., Entergy Mississippi, Inc., Entergy Operations, Inc., Entergy Gulf States Louisiana, LLC and other Entergy entities, which letter is attached hereto as **Exhibit A**.  By that letter, the DOJ instructs that: (1) the same matter that forms the basis of this Complaints has been referred to it "for consideration of judicial enforcement"; and (2) it has determined that the listed Entergy entities "are in violation of" Executive Order 11246, Section 503 of The Rehabilitation Act of 1973, and Section 4212 of VEVRAA.  The letter further instructs that the Assistant Attorney General "has authorized the filing of suit against Entergy" absent indication of acquiescence to a consent decree on specified terms by July 16, 2014.  Because Plaintiffs have no intention of entering into a consent decree on the terms proposed by the DOJ, and especially in the light of the threat of suit appearing in the

4

June 17, 2014 letter, there clearly is a controversy and dispute over the subject matter of this Complaint, making declaratory relief proper.

## VENUE

15.     Venue is proper under 5 U.S.C. § 703 and 28 U.S.C. § 1391(e)(1)(B).   A substantial part of the events giving rise to Plaintiffs' claims occurred in the territory of the United States District Court for the Eastern District of Louisiana.

## PROCEDURAL HISTORY

16.     Plaintiffs initially brought an action for declaratory relief before the Office of Administrative Law Judges of the Department of Labor ("OALJ") on the basis that OFCCP violated Plaintiffs' Fourth Amendment rights under the United States Constitution to be free from unreasonable searches and seizures by selecting 12 of Plaintiffs' establishments for potential audit in May 2012, without reference to a "neutral administrative plan" and without evidence of a current violation of any of the laws or regulations referenced above for which OFCCP has enforcement responsibility.[1]

17.     A present and actual controversy existed, and continues to exist, between Plaintiffs and OFCCP because OFCCP has sent audit "Scheduling Letters" for 10 of the 12 establishments selected for potential audit, and sent Notices to Show Cause for 11 of the 12 establishments selected for potential audit (and thus putting in controversy 11 attempted audits at 11 different Entergy System establishments).[2]   Further, two of those establishments, North

---

[1]  Contractors develop required "Affirmative Action Plans" by "establishment" and OFCCP audits by "establishment," which correlates roughly to a contractor's office or plant locations.

[2] Despite not having sent a Scheduling Letter properly notifying Entergy that its Beaumont, Texas establishment had been selected for audit, OFCCP issued a Notice to Show Cause pertaining to the Beaumont establishment.

Boulevard in Baton Rouge, Louisiana and 639 Loyola Avenue in New Orleans, are headquarters establishments (for EGS-LA and ESI respectively) which undergo a special form of OFCCP compliance evaluation known as a Corporate Management Compliance Evaluation ("CMCE") and must include an onsite inspection pursuant to longstanding OFCCP practice.

18.     On October 26, 2012, Plaintiffs filed an administrative Complaint for declaratory relief with the OALJ challenging the OFCCP's selection of 12 of Plaintiffs' establishments for a potential "Compliance Review" search of each of the establishments in violation of Plaintiffs' Fourth Amendment rights.[3]   OFCCP case decisions have held that contractors may not respond in any substantive way to OFCCP's Desk Audit document requests without waiving their Fourth Amendment rights.  Rather, contractors must object to the OFCCP's proposed search or they will waive their Fourth Amendment rights by substantively responding to the OFCCP's document requests.  *See Bank of America, N.A., v. Solis*, CA No. 09-2009 (D.D.C. Dec. 13, 2011), 2011 U.S. Dist. LEXIS 152576 at *45 (while Bank of America proved the OFCCP had in fact violated its Fourth Amendment rights by selecting it for audit without benefit of a neutral administrative plan or other probable cause, Bank of America was nonetheless found to have waived its Fourth Amendment rights by responding substantively to the OFCCP's audit "Scheduling Letter" (which provokes and commences the Desk Audit phase of the Compliance Review) by supplying books and records to OFCCP rather than challenging OFCCP's selection process).  To avoid waiving their rights and to clarify and verify the legal basis for OFCCP to proceed against them via at least 11 burdensome and expensive audits, Plaintiffs in good faith sought declaratory relief

---

[3] A Compliance Review is one of several types of "Compliance Evaluation" OFCCP uses to carry out its mission and is its primary audit and investigation tool.  OFCCP divides a Compliance Review into three distinct parts: A "Desk Audit" phase (demanding contractor documents and reviewing them in its offices); an "onsite" phase (during which OFCCP investigators potentially come onsite to the contractor's establishment to potentially interview contractor employees and to review contractor books and records as the needs of the investigation might warrant); and an "offsite" phase (during which OFCCP repairs to its offices to evaluate its investigative file and determine how to resolve the audit with or without a finding of compliance).

as to their constitutional rights before the administrative agency.

19.     Plaintiffs contend that the Fourth Amendment to the United States Constitution requires the OFCCP to either first demonstrate that it has a reasonable and good faith basis to audit Plaintiffs or has probable cause to justify the issuance of a warrant by either (a) evidence of a current violation of the laws OFCCP enforces, or (b) an established and properly implemented "neutral, administrative plan" that fairly selected Plaintiffs for each of the at-issue searches. *Beverly Enters. v. Herman*, 130 F. Supp. 2d 1, 9 (D.D.C. 2000); *United States v. New Orleans Public Service, Inc.*, 723 F.2d 422 (5th Cir. 1984).   Because OFCCP scheduled Plaintiffs' establishments for Compliance Reviews without a reasonable good faith basis, apparent reference to a "neutral administrative plan," or upon "neutral application" of any "neutral administrative plan," Plaintiffs contend that the OFCCP's selection process must be reviewed under the constitutional requirements that the Fourth Amendment guarantees.

20.     On November 5, 2012, shortly after receipt of Plaintiffs' Complaint, the ALJ issued a "Notice of Docketing and Order to Brief Procedural Posture of the Matter," requesting that both Plaintiffs and OFCCP brief the ALJ as to the question of whether the OALJ has subject matter jurisdiction over the declaratory relief action that Plaintiffs requested.   On November 14, 2012, Plaintiffs filed their Brief re: OALJ Authority to Conduct Declaratory Relief Hearing, in which Plaintiffs presented the legal authority that provides administrative courts, and the OALJ in this matter, the ability to hear and adjudicate declaratory actions pursuant to the APA and the Department of Labor's Rules of Practice (29 C.F.R. § 18.1), or in the alternative, under the OFCCP's Rules of Practice ("ROP") (41 C.F.R. §§ 60-30).

21.     The OFCCP filed its brief on November 15, 2012, asserting that the OALJ lacked jurisdiction as to actions pertaining to Executive Order 11246 since OFCCP's ROP controlled

and differentially only allowed OFCCP to proceed before the OALJ by filing a Complaint pursuant to 41 C.F.R. Part 60-30. Specifically, the OFCCP argued that it had issued ROP that allowed <u>only</u> the OFCCP to file a Complaint before the OALJ, that its ROP did not, as a matter of law, incorporate the Federal Rules of Civil Procedure and Rule 57 of those Rules, and thus did not permit declaratory relief, and further that the DOL's ROP do not apply.   However, the OFCCP did not adequately address how such a conclusion could be true when: 1) its own ROP specifically adopt the Federal Rules of Civil Procedure ("FRCP") when the OFCCP's ROP are silent as to an issue of procedure (as they are here as to declaratory judgments); 2) the FRCP, in turn, provide for declaratory judgments via Rule 57; 3) the OFCCP's ROP by their very terms do not apply to contractor-initiated actions; 4) the DOL's ROP apply when the OFCCP's ROP do not; and 5) like the OFCCP's ROP, the DOL's ROP specifically adopt the FRCP, including Rule 57 ("Declaratory Judgment"), when its ROP are silent as to an issue of procedure (as they are here).

22.    On November 27, 2012, the ALJ issued an Order Dismissing Plaintiffs' Complaint for Lack of Subject Matter Jurisdiction ("Order Dismissing Plaintiffs' Complaint"). *See* **Exhibit B**.   The ALJ's dismissal was based on the following.   First, the ALJ noted that Section 554 of the APA applies to "adjudications required by statute to be determined on the record after opportunity for an agency hearing," and that "Executive Order 11246 is not a statute," and neither Section 503 nor VEVRAA provide for on-the-record hearings.   Therefore, the ALJ held that Section 554 of the APA is not applicable to this matter "because OALJ's jurisdiction over the OFCCP administrative complaints is afforded by Executive Order and regulation rather than by statute."   Second, the ALJ held that, even if Section 554(e) applies when the agency adjudication is conducted by virtue of a regulation or Executive Order, the

OALJ's subject matter jurisdiction comes from 41 C.F.R. § 60-30.5, 41 C.F.R. § 60-250.65(b)(3), and 41 C.F.R. § 60-741.65(b)(3), not the APA, and each of these regulations provides authority for the OALJ to adjudicate administrative complaints only when the Office of the Solicitor files a Complaint on behalf of OFCCP as a Plaintiff.  Therefore, the ALJ concluded that OFCCP's regulations do not authorize contractors to initiate a hearing before the OALJ by the filing of an Administrative Complaint for Declaratory Relief.  Third, the ALJ held that the DOL's ROP (29 C.F.R. § 18.1) are not used in OFCCP administrative complaint cases, and therefore, the cross-reference to the FRCP found in the OALJ's ROP does not apply to Plaintiffs' Complaint.  Fourth, the ALJ stated that, regardless of whether the OFCCP's or the DOL's ROP apply, a mere cross reference in the OFCCP's and the DOL's ROP to incorporate the FRCP to "fill procedural gaps" cannot confer jurisdiction to OALJ on matters reserved to Article III courts (despite the APA's allowance of Declaratory Relief before administrative agencies).

23.     On or about December 13, 2012, Plaintiffs filed with the ARB (the DOL's highest administrative court of last appellate resort) "Exceptions" to the ALJ's Order based on the authorizing language of the APA, as well as the DOL's and the OFCCP's regulations which expressly incorporate the FRCP and Rule 57 and thus permit declaratory relief before the OALJ. However, on May 19, 2014, the ARB issued a Final Decision and Order affirming the ALJ's dismissal of Entergy's complaint for declaratory relief and finding that the applicable statutes and implementing regulations empower only OFCCP to file an administrative complaint.  ***See Exhibit C.***

## GENERAL ALLEGATIONS

24.     In 2004, Entergy Corporation received an EVE ("Exemplary Voluntary Efforts") Award from the DOL (the Department's highest award given to the single company in the nation

undertaking exemplary affirmative action practices worthy of publicity and emulation by other federal contractors), which resulted in a three-year exemption from OFCCP audits.

25.     On May 2, 2012, OFCCP issued a Corporate Scheduling Announcement Letter ("CSAL") forewarning of potential coming OFCCP Compliance Reviews (*see* **Exhibit D**) and listing 12 Entergy System establishments for potential audit:

        a.   Highway 80 E in Clinton, MS (an EMI establishment);

        b.   North Causeway Boulevard in Metairie, LA (this establishment does not exist);

        c.   Strickland Drive in Orange, TX (an ETI establishment);

        d.   North 11th Street in Beaumont, TX (an ETI establishment);

        e.   W. Northside Boulevard in Jackson, MS (an EMI establishment);

        f.   Kemp Bottom Road in Vicksburg, MS (an EMI establishment);

        g.   Seneca Street in Oswego, NY (an ENOI establishment);

        h.   Echelon Parkway in Jackson, MS (an EOI establishment);

        i.   Bald Hill Road in Port Gibson, MS (an EOI establishment);

        j.   River Bend Station in Saint Francisville, LA (an EOI establishment);

        k.   Loyola Avenue in New Orleans, LA (an ESI establishment); and

        l.   North Boulevard in Baton Rouge, LA (an EGS-LA establishment).

26.     Plaintiffs noticed several anomalies in the sites OFCCP selected for potential audit.

27.     For example, contrary to OFCCP's longstanding practice to not select for audit establishments with fewer than 50 employees, the following establishments (all of which have fewer than 50 employees) received an audit scheduling letter:

a.  North Causeway Boulevard  in Metairie, LA (which has not been occupied by an Entergy System company or had any Entergy System employees since the 1990s);

b.  Highway 80 E in Clinton, MS;

c.  Strickland Drive in Orange, TX; and

d.  Kemp Bottom Road in Vicksburg, MS.

28.  Additionally, contrary to OFCCP's longstanding practice of not selecting for audit establishments for which OFCCP administratively closed an audit less than two years previously, the CSAL lists, and OFCCP sent an audit Scheduling Letter for, 639 Loyola Avenue (the headquarters establishment for Entergy Systems), which received an audit closure letter on March 28, 2011, with a finding of full compliance.

29.  Moreover, a spike to 11 expensive and burdensome OFCCP audits in one 12-month period was unprecedented in Entergy's history with OFCCP during which Entergy System companies rarely collectively received more than one or two audits per year and in some years received none (OFCCP audits only approximately 4,000 "Supply and Service" contractors like Entergy Systems companies or approximately 2-3% of the 170,000 or so establishments estimated to exist with 50 or more employees among the nation's covered federal contractors and subcontractors).

30.  Plaintiffs are concerned about the legality of OFCCP's audit selection process and the financial cost burdens OFCCP now seeks to inappropriately place on them via onerous Compliance Reviews.  Given that a major portion of the Entergy System's business consists of regulated utilities (electric and gas), Plaintiffs have a responsibility to their rate-paying residential and corporate customers to ensure the propriety of the selection process because the

11

utility rate-payers (i.e., the general public) will ultimately bear the cost burden of OFCCP's audits.

31.    Plaintiffs received audit Scheduling Letters for 10 of the 12 sites (all except North 11th Street in Beaumont, TX and Seneca Street in Oswego, NY) identified in the CSAL.  Despite having not received a Scheduling Letter for the Beaumont, Texas facility, Plaintiffs nonetheless received a Notice to Show Cause for the Beaumont facility.

32.    Further, OFCCP has scheduled the North Boulevard establishment in Baton Rouge, LA for what was then called a CMCE ("Corporate Management Compliance Evaluation," colloquially known as a "Glass Ceiling" audit, specially and uniquely reserved and used in connection with either national or regional headquarter establishments), which, according to OFCCP's longstanding practice, means that OFCCP must and will conduct an onsite search.

33.    Further, OFCCP intends an onsite audit at all 11 of the Plaintiff's establishments pursuant to its audit practice of going onsite in every instance in which a covered federal contractor declines to provide compensation data to OFCCP in response to the agency's request as all 11 Entergy Plaintiffs here have declined to do. *See* OFCCP Directive 289, dated June 4, 2010: "OFCCP prefers that the additional [compensation] data items be submitted in a password protected Microsoft Excel format on a CD; however, other formats are acceptable.  If the additional information cannot be obtained by overnight mail or email under secured data transfer methods, the CO should collect the data by onsite visit."

34.    Plaintiffs objected to each of OFCCP's audit Scheduling Letters and requested that OFCCP "administratively close" the audits.

35.    Plaintiffs also contacted OFCCP's National Office in Washington, D.C. on July 10 and July 25, 2012, seeking a meeting to express their concerns.

36.     OFCCP refused to meet with Plaintiffs about the selection process and, to date, has not closed any of the audits.

37.     On September 27, 2012, OFCCP issued a Notice to Show Cause for the five Mississippi establishments listed in the CSAL for Compliance Reviews.  On December 18, 2012, OFCCP issued a Notice to Show Cause for the remaining six establishments OFCCP had noticed for a Compliance Review.  OFCCP's Notices to Show Cause demand to know why the OFCCP should not file an Administrative Complaint within 30 days that seeks to compel an audit.

38.     To date, OFCCP has refused to advise Plaintiffs of either the neutral administrative plan which led OFCCP to suddenly select up to 12 Entergy System establishments for potential audit or to advise of the evidence OFCCP had, if any, that each of the Plaintiffs engaged in conduct that violated one or more of the laws or regulations for which OFCCP has enforcement authority.

39.     OFCCP has not to date filed an Administrative Complaint as to any of the 11 extant Notices to Show Cause.

## CLAIMS FOR RELIEF

## COUNT ONE

### (Review of Agency Action)

40.     Plaintiffs reallege all of the foregoing allegations of this Complaint as if copied *in extenso*.

41.     This Court has the authority to review the decisions of federal administrative agencies to determine if their actions are in compliance with federal law.  Specifically, this Court has authority pursuant to section 702 of the APA to review final decisions and orders of federal agencies.  Pursuant to section 706(2)(A) of the APA, the court must hold unlawful any agency

13

action, findings and conclusions that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"

42.     The final decision of the Department of Labor as set forth in this Complaint to refuse to consider Plaintiffs' request for declaratory relief was not otherwise in accordance with law.  Relevant legal authority demonstrates that the administrative forum is the proper forum in the first instance to consider and rule upon Plaintiffs' challenges to these agency actions pursuant to the Fourth Amendment to the United States Constitution.  Accordingly, Plaintiffs request that this Court vacate the order of the Department of Labor, and remand this matter to the agency for a hearing and consideration of Plaintiffs' claims on the merits.

## COUNT TWO (ALTERNATIVE CLAIM FOR RELIEF)

## (Declaratory Judgment as to Plaintiffs' Rights Against Unreasonable Searches and Seizures Pursuant to the Fourth Amendment of the United States Constitution)

43.     Plaintiffs reallege all of the foregoing allegations of this Complaint as if copied *in extenso.*

44.     In the event that the Court determines that this matter should not be remanded to the administrative agency for a hearing and considerations on the merits, this Court should itself consider the merits of Plaintiffs' claims for declaratory relief (in accordance with the ALJ's Final Decision and Order, which suggested that contractor declaratory relief proceedings are reserved for Article III judges).

45.     The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that no warrants shall be issued without probable cause. U.S. Const. Amend. IV.

14

46.     The Fourth Amendment applies to compliance reviews conducted pursuant to Executive Order No. 11246.  *Bank of America, N.A., V. Solis,* 2011 U.S. Dist. LEXIS 152576 at *45 (D.D.C. Dec. 13, 2011) ("an order requesting desk audit data should be evaluated under the Fourth Amendment standard set out in *Donovan v. Lone Steer, Inc.*"); *see also Beverly Enterprises v, Herman*, 130 F. Supp. 2d 1, 14  (D.D.C. 2000); *United States v. New Orleans Public Service, Inc.*, 723 F.2d 422 (5th Cir. 1984).  For an onsite search to be valid under the Fourth Amendment, a federal agency must show it has satisfied its constitutional obligations with respect to the search.  *Bank of America,* 2011 U.S. Dist. LEXIS 152576 at *45.

47.     OFCCP carries the burden to demonstrate that it had "probable cause" to select up to 12 of Plaintiffs' establishments for audit and that it initiated its search in a proper manner as to each of the 11 at-issue establishments OFCCP has already noticed for audit and as to which Plaintiffs have properly objected.

48.     OFCCP has not satisfied its burden to establish that it had probable cause to select any of the 12 establishments at issue for potential audit.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

49.     That this Court vacate the decision of the Department of Labor, and remand this matter to the administrative agency for a hearing and consideration of Plaintiffs' claims for declaratory relief on the merits;

50.     In the alternative, that this Court itself consider Plaintiffs' claims for declaratory relief on the merits and find that OFCCP violated Plaintiffs' Fourth Amendment rights against unreasonable searches and seizures as to each of the 11 at-issue locations which OFCCP has scheduled for audit and to which Plaintiffs have properly objected by refusing to respond to

those OFCCP audit Scheduling Letters;

51.    That this Court issue a permanent injunction ordering OFCCP to cease and desist from further investigating the 12 establishments that are the subject of this Complaint;

52.    That this Court issue a permanent injunction ordering OFCCP to select Plaintiffs for Compliance Reviews only upon a proper finding of "probable cause" consistent with the Fourth Amendment;

53.    For Plaintiffs' costs and disbursements related hereto; and

54.    For such other and further relief as this Court deems just and proper.


Date:   July 1, 2014                              Respectfully submitted,


                                                  /s/  Richard C. Stanley
                                                  Richard C. Stanley, 8487
                                                  Dominik J. Cvitanovic, 35099
                                                  STANLEY, REUTER, ROSS,
                                                  THORNTON & ALFORD, L.L.C.
                                                  909 Poydras Street, Suite 2500
                                                  New Orleans, Louisiana 70112
                                                  Telephone:     (504) 523-1580
                                                  Facsimile:      (504) 524-0069
                                                  rcs@stanleyreuter.com
                                                  djc@stanleyreuter.com

                                                  and

                                                  Megan Shemwell Nash
                                                  Entergy Services, Inc.
                                                  639 Loyola Ave., Suite 22B
                                                  New Orleans, Louisiana  70113
                                                  Telephone:     (504) 576-5819
                                                  Facsimile:      (504) 576-7750
                                                  mnash1@entergy.com

                                                  *Attorneys for Plaintiffs,*
                                                  Entergy Services, Inc.; Entergy Mississippi, Inc.;
                                                  Entergy Texas, Inc.; Entergy Nuclear Operations,

Inc.; Entergy Operations, Inc.; and Entergy Gulf
States, Louisiana, LLC

Awaiting Pro Hac Vice Admission:

John C. Fox
Alexa L. Morgan
FOX, WANG & MORGAN, P.C.
160 West Santa Clara Street, Suite 700
San Jose, California  95113
Telephone: (408) 844-2350
Facsimile: (408) 844-2351
jfox@foxwangmorgan.com